**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**MAURICE STATON, 95-A-8381,**

                        **Petitioner,**                    **03-CV-0184Sr**

**v.**

**STATE OF NEW YORK,**

                        **Defendant.**

_____


## DECISION AND ORDER

                In accordance with 28 U.S.C. § 636©, the parties have consented to have the undersigned conduct all further proceedings, including entry of judgment, with respect to this petition for _habeas corpus_ relief pursuant to 28 U.S.C. § 2254.  Dkt. #9.


                Petitioner commenced this proceeding _pro se_, pursuant to 28 U.S.C. § 2254, challenging his conviction upon a plea of guilty to the crime of attempted promoting prison contraband in the first degree on the grounds that his right to due process was violated by the delay of six months and 21 days from the incident to the indictment and that his conviction was obtained by use of a coerced confession. Dkt. #1.  For the following reasons, the petition is denied.


## BACKGROUND

                At approximately 8:50 p.m. on October 23, 2000, Corrections Officer ("C.O."), Traux, C.O. Edwards and Sergeant ("Sgt."), Howarth responded to a fight between petitioner and another inmate in the field house of the Elmira Correctional

Facility.  Dkt. #5, Exh. A.  C.O. Traux reported that after the inmates were separated, it was observed that inmate Hood had been cut on the right side of his face.  Dkt. #5, Exh. A.  Sgt. Howarth asked where the weapon was, and petitioner replied that "he had a razor in his right front pocket of his pants."  Dkt. #5, Exh. A.  C.O. Traux retrieved from petitioner's pocket a "state type razor" measuring approximately 1 ¾" long by ½" wide, wrapped with masking tape.  Dkt. #5, Exh. A.

Petitioner was escorted to the hospital ward of the facility, where he was observed to have "blood on his left hand," but no cuts.  Dkt. #5. Exh. D.  Petitioner signed an inmate injury report in which he admitted "using a razor to cut another inmate . . . . "  Dkt. #5, Exh. D.  In a memo memorializing his interview with petitioner, Sgt. West recounted that petitioner said that

> he cut the other inmate because inmate Hood was going to
> cut him first.  He also said that it was gang related and that
> inmate Hood was a "Blood."  As he stated: "I got to him
> before he got to me."

Dkt. #5, Exh. A.  Inmate Hood required 6 stitches on his face.  Dkt. #5, Exh. D.

The Elmira Correctional Facility forwarded the unusual incident report regarding the events of January 6th to an Investigator for the New York State Police on February 22, 2000.  Dkt. #5, Exh. G, ¶ 3.  Petitioner, who had been transferred to Upstate Correctional Facility, declined to consent to an interview by an Investigator for the New York State Police on May 29, 2000.  Dkt. #5, Exh. G, ¶¶ 4-5.  The Investigator provided the case information to the Chemung County District Attorney's Office on July 6, 2000.  Dkt. #5, Exh. G, ¶ 6.  On July 27, 2000, petitioner was indicted by the

Chemung County Grand Jury on a single count of promoting prison contraband, first

degree, in violation of Penal Law § 205.25(2).  Dkt. #5, Exh. A.

As part of an omnibus motion, defense counsel moved to dismiss the

indictment because "the protracted pre-arrest delay in the prosecution of the instant

matter constitutes a denial of the defendant's right to due process of law" pursuant to

New York criminal procedure law, Article I, Section 6 of the New York Constitution, and

the Fifth and Fourteenth Amendments to the United States Constitution.  Dkt. #5, Exh.

F.  Defense counsel also moved to suppress "any statements of the defendant given to

a public servant."  Dkt. #5, Exh. F.  At oral argument on the motions, defense counsel

informed the County Court that the defense "just wish to be heard on that aspect of our

motion" which sought dismissal of the indictment due to pre-indictment delay.  Dkt. #5,

Exh. I, p.2.  Defense counsel argued that

> There is prejudice in this case as there is in any other
> case.  You will note that Mr. Staton is now housed in double
> bunk Special Housing Unit in the Upstate Correctional
> Facility, some eight hours from Elmira, far away from the
> scene of the alleged crime.  He's had no contact with any of
> the people on his cell . . . block since the time in question
> and is unable to prepare a defense.
>
> * * *
>
> He . . . does have prejudice with regards to his ability
> to prepare for his case in that he is housed eight hours away
> from his lawyer.  That action was taken not at his request,
> but by the Department of Corrections. [sic] Thereby making
> it nearly impossible for Mr. Staton to prepare a defense in
> any reasonable or credible manner.

Dkt. #5, Exh. I, pp.3-4.

By Decision & Order entered October 25, 2000, the County Court

determined that

> The length of delay in this case was just under seven
> months.  That time, while not insignificant, is not shocking or
> completely inappropriate.  There seems to have been
> relatively equal delay in the Department of Correctional
> Services, the State Police and the District Attorney's Office
> (with the State Police having the slightly greater delay).
> One might expect that in criminal investigations
> priorities must be afforded allocating resources between
> various cases.  More serious crimes might receive greater
> resources.  Crimes involving danger to the general
> community might receive greater resources than those
> involving convicted inmates who are already under the
> control of authorities.  Such inmates will hopefully remain
> under state control and due to administrative action may be
> less likely to repeat violations than a suspect who is free in
> the community.  An attempt was made by the State Police to
> interview the defendant, who refused to be interviewed by
> Investigator Babcock.  There was no apparent bad faith on
> the part of the People or law enforcement involved in the
> delay.

Dkt. #5, Exh. J, pp. 3-4 (internal quotations & citations omitted).  After considering the

"fundamental fairness tests"[1] set forth by the New York State Court of Appeals to

assess due process claims such as petitioner's, County Court denied the motion to

dismiss, concluding that

> In the case at bar, no one factor, or all the factors
> considered together, stands out as fundamentally unfair to
> the defendant.  The defendant has not established actual
> prejudice.  The officers involved have obviously made
> records of the incident and those records have undoubtedly
> been set forth in the administrative proceeding involving the
> defendant.  In that regard the People's witnesses have
> locked in their statements and may be subject to cross-
> examination concerning any variation in their trial testimony.
> The defendant knew he was in trouble when he was caught

---

[1] *See People v. Singer*, 44 N.Y.2d 241 (1978); *People v. Taranovich*, 37 N.Y.2d 442 (1975).

> fighting with another inmate and when he had a weapon. A
> reasonable person would take note of the particulars of such
> an incident. Passage of some seven months should not
> have prejudiced the defendant's memory of the incident.
> The stigma involved in the pending criminal charges is not
> shocking or fundamentally unfair considering the total
> circumstances of the case.

Dkt. #5, Exh. J, pp.4-5.


On December 4, 2000, petitioner entered a plea of guilty to the reduced charge of attempted promoting prison contraband in the first degree with the understanding that, as a second felony offender, he would receive an indeterminate sentence of 1½ to 3 years consecutive to his current term of incarceration. Dkt. #5, Exh. K, pp.2-3. During the plea colloquy, petitioner represented to the Court that he was satisfied with the services of his attorney and affirmed his understanding of the terms of the plea and the rights he was giving up by entering the plea. Dkt. #5, Exh. K, pp.3-5. Petitioner specifically affirmed his understanding "that by pleading guilty you are waiving any pretrial hearings which would challenge the legality of any statements you may have given to law enforcement, the seizure of any physical objects from you or an identification of you as a participant in the crime." Dkt. #5, Exh. K, pp.3-5.


On appeal, petitioner argued that the pre-indictment delay of over six months violated his due process rights under Article I, § 6 of the New York State Constitution. Dkt. #5, Exh. P. The New York State Appellate Division, Third Department determined that

> The period of delay at issue here, 6 months and 21 days
> between the commission of the crime and the indictment, is

> relatively brief.  We have noted that delays of similar lengths have been found not to have compromised due process rights.  In addition, the underlying charge, involving the security of the correctional facility, is serious in nature. Furthermore, although the defendant is correct that a protracted and unjustified delay in commencing a prosecution may entitle a defendant to dismissal even though there is no showing of actual prejudice, where the period of delay is comparatively brief, as it is in this case, defendant's failure to demonstrate that his defense has been impaired by reason of the delay is a significant factor militating against his due process claim.  Finally, as defendant was already incarcerated for a prior conviction, he endured no further imposition on his freedom as a result of the delay.  Accordingly, we conclude that the County Court properly denied defendant's motion to dismiss the indictment and the conviction should be upheld.

Dkt. #5, Exh. R; *See People v. Staton*, 297 A.D.2d 876 (3d Dep't 2002).  Permission for leave to appeal to the New York State Court of Appeals was denied.  Dkt. #5, Exh. R; *See People v. Staton*, 99 N.Y.2d 565 (2002).

## DISCUSSION

**Allegations of Pre-Indictment Delay**

Petitioner claims that his right to due process as guaranteed by the United States Constitution was violated by the passage of more than six months between the incident and the indictment.  Dkt. #1.  Petitioner claims that his ability to prepare his defense was compromised as a result of the length of time which elapsed before he was indicted because

> If I would have been informed of criminal charges against me much sooner, I would have had time to study my rights under the law.  Due to this delay I was unable to appear in front of the grand jury by request to review the evidence against me.

Dkt. #1.  The Respondent asserts that this federal constitutional claim was not presented to the state courts and that the claim lacks merit.  Dkt. #6.

In *United States v. Marion*, the United States Supreme Court "considered the significance, for constitutional purposes, of a lengthy preindictment delay," and concluded that although the statute of limitations is the primary guarantee against bringing overly stale criminal charges, "the Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco*, 431 U.S. 783, 788, 789 (1977), *citing United States v. Marion*, 404 U.S. 307 (1971).  *Marion* "makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused."  *Id.* at 790.  Thus, dismissal of an indictment is not warranted under federal constitutional standards unless the pre-indictment delay "caused substantial prejudice" to the defendant's right to a fair trial and "the delay was an intentional device to gain tactical advantage over the accused."  *Marion*, 404 U.S. at 324.  It is the defendant who "bears the heavy burden of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999) (internal quotation omitted); *see also Denis v. Upstate Correctional Facility*, 361 F.3d 759, 760 (2d Cir. 2004).  "Prejudice in this context has meant that sort of deprivation that impairs a defendant's right to a fair trial," for example, "the loss of documentary evidence or the unavailability of a key witness."  *Cornielle*, 171 F.3d at 752.

-7-

In the instant case, petitioner has not established either substantial prejudice or improper purpose.  Petitioner does not claim that physical evidence has been lost nor does he identify any witnesses he would have secured had he been indicted prior to his transfer to the Upstate Correctional Facility.  Moreover, petitioner possessed "no constitutional right to appear personally before the grand jury."  *United States v. Ciambrone*, 601 F.2d 616, 622-23 (2d Cir. 1979).  In any event, petitioner can not demonstrate prejudice from his failure to appear before the grand jury because he has failed to indicate "what he would have told the grand jury that would have prevented his indictment."  *Hutchings v. Herbert*, 260 F. Supp.2d 571, 578 (W.D.N.Y. 2003); *see Saldana v. State of New York*, 850 F.2d 117, 119 (2d Cir.) (*habeas corpus* petition dismissed where petitioner claimed denial of due process from the district attorney's failure to afford the petitioner an opportunity to testify before the grand jury where petitioner could not demonstrate that he was prejudiced by this failure, *i.e.*, that his testimony was likely to have made any difference in the charges filed by the grand jury), *cert. denied*, 488 U.S. 1029 (1989).

Petitioner has also failed to proffer any evidence to demonstrate intent to delay presentation of the matter to the grand jury or to otherwise suggest improper motive on behalf of the Chemung County District Attorney's office or any governmental agency.  The period of time which elapsed between the incident and indictment totaled 6 months and 21 days, with officials at the Elmira Correctional Facility presenting the unusual incident report to the New York State Police within seven weeks of the incident; New York State Police attempting to interview petitioner and, following his refusal to

consent to an interview, presenting their investigation to the Chemung County District Attorney's Office within 20 weeks; and the District Attorney presenting the matter to the grand jury within 3 weeks of receiving the case.  Dkt. #5, Exh. G, ¶¶ 2-7.  Improper motive cannot be inferred from these time periods.  *See United States v. Alameh*, 341 F.3d 167, 175 (2d Cir. 2003) (petitioner "proffered no evidence that intentional delay occurred" where government waited nearly fifteen years after sham marriage and almost ten years after application for citizenship to bring an indictment charging unlawful procurement of naturalization).

Since petitioner has failed to demonstrate that he suffered actual prejudice because of the alleged pre-indictment delay and that such delay was intentionally pursued by the government for an improper purpose, the Court exercises its discretion to deny the application for a writ of *habeas corpus* on the merits, without consideration of whether the petitioner fairly presented the federal constitutional claim to the state courts.  *See* 28 U.S.C. § 2254(b)(2).

**Allegations of Coreced Statements**

Petitioner claims that he plead guilty because his motion to suppress statements, which he claims was obtained by corrections officers after they physically assaulted and threatened him, was denied.  Dkt. #1.  Respondent asserts that petitioner entered his plea of guilty before the motion to suppress was considered by the County Court and was specifically advised that he was waiving any challenge to the legality of any statements he may have made.  Dkt. #6, pp.11-12.

The Supreme Court of the United States has announced a "general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings."  *Lefkowitz v. Newsome*, 420 U.S. 283, 288 (1975).  An exception to this rule exists where a state permits appeal from an adverse ruling in a pretrial proceeding despite a plea of guilty.  *Id.*  Thus, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."  *Id.* at 293.

In New York, section 710.70(2) of the Criminal Procedure Law provides that "[a]n order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty."  However, the New York Court of Appeals has found this statute unavailable to individuals who plead guilty before their suppression motions have been decided.  *See People v. Fernandez*, 67 N.Y.2d 686, 688 (1986).  Since the petitioner entered his guilty plea prior to any decision regarding the motion to suppress his statements, with knowledge that he was waiving the opportunity to challenge the legality of any statements given to law enforcement, he is foreclosed from arguing  that the statements were obtained in violation of his constitutional rights in this collateral proceeding.  *See Corti v. Scully*, 1987 WL 5803 (S.D.N.Y. Jan. 14, 1987) (petition for *habeas corpus* denied where petitioner plead guilty prior to hearing or decision on his motion to suppress certain confessions and admissions made to law enforcement officials).

## CONCLUSION

Based on the foregoing, the petition for *habeas corpus* relief is **DENIED**. The Clerk of the Court is directed to enter judgment in favor of respondent.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal from this decision and order may not be taken *in forma pauperis* because such an appeal would be frivolous and cannot be taken in good faith. *See  Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Court also finds that the petition presents no question of substance for appellate review, and that petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Fed.R.App.P. 22(b). Accordingly, a certificate of appealability will not issue.

**SO ORDERED.**

DATED:       Buffalo, New York
             May 23, 2005

                              **S/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**